BROTHERHOOD OF RAILROAD TRAINMEN INSURANCE DEPT., INC. *v.* McLEMORE

No. 40179            September 24, 1956            89 So. 2d 629

*Brandon, Brandon, Hornsby & Handy*, Natchez, for appellant.

*W. A. Geisenberger,* Natchez, for appellee.

LEE, J.

James T. McLemore, by his declaration, sought to recover from the Brotherhood of Railroad Trainmen Insurance Department, Inc., a disability benefit in the sum of $2,400.00 for the two year period commencing December 1, 1952, on account of paralysis agitans or Parkinson's disease. The answer of the defendant denied. in detail every material allegation of the complaint. There was a verdict for the plaintiff for the full amount. and, from the judgment entered thereon, the Trainmen appealed.

McLemore in 1939, while he was a brakeman on the Illinois Central railroad, took out a certificate of insurance with the Trainmen. One provision thereof insured against total disability for any one type of sickness in the amount of $100 per month for not in excess of 24 months.

Early in 1949 he suffered a disability on account of hypertension, or high blood pressure, and was paid benefits for three months. He then went back to work, but, in a short time, for the same reason he had to quit. He thereupon made proof of his disability, and the Trainmen thereafter paid the full benefit of $2,400 for the period from June 12, 1949, to June 12, 1951, at which time he was still disabled. In the meantime, he was retired by the railroad company on account of his disability, and he has since received $105 monthly as a retirement benefit.

On July 17, 1951, and May 21, 1952, by letter, McLemore inquired of the Trainmen if he was entitled to benefits on a type of sickness other than hypertension.

McLemore testified that, about four months after receiving his last insurance benefit, he recovered his health. He owned 444 acres of land and had been raising cattle

in a small way, as he had not been confined to bed during his disability. He did such work as was necessary in connection with these operations. While he was not entirely normal, he was in pretty fair health and was not disabled to any great extent. In October and November 1952, his health was good. When he awoke and got up on December 1, 1952, his arms were shaking. He had not previously noticed any tremor in his arms, legs or body, nor had anybody else made comment thereon. Later that day, he drove his car to Fayette, Mississippi, to see Dr. Harper; and the next day his wife drove him to Natchez to see Dr. Dixon. He was sent promptly to a hospital in New Orleans where he remained for nearly three weeks. Other doctors treated him and he was also treated by chiropractors and spent some time in a chiropractic hospital. In 1952, 1953 and 1954 he did about the same work on his farm that he had done previously.

In August 1954 Dr. L. Costly, who practiced medicine at Meadville, examined him. The doctor testified that he knew nothing about McLemore's previous health and did not ask about it to aid in his diagnosis, nor did McLemore tell him much about his previous illnesses. He took his blood pressure and it was normal, about 140 or 145 over 90. When asked what other tests he made, the Doctor replied ''I observed him walk and the set of his eyes like you usually do and see how he balances up. That's all I could do,'' and ''he couldn't walk good and he just has that tremor in his right hand''. He referred to no other symptoms. He was of the opinion that the plaintiff had a mild case of paralysis agitans or Parkinson's disease. The witness admitted that this disease is not suffered suddenly unless from a cerebral accident mild enough not to cause apoplexy, and that a victim may not notice the development for several months. He said that McLemore, if he tries, can hold his hand pretty still. Of all the doctors, who had treated the plaintiff, only Dr. Costly testified in his behalf. It is apparent that

this examination was a superficial one. Thereafter however he did see and observe McLemore several other times.

On the contrary, Dr. Will T. Harper, who had treated McLemore since 1945-6 for high blood pressure, at first with a kidney involvement, when he made an examination after the alleged sudden attack on December 1, 1952, testified that "I thought he had a stroke, that is a cerebral hemorrhage".

Dr. Clifford Tillman testified that he examined the plaintiff at the instance of his attorney on March 1, 1954. At the time, he got a complete history, with the patient's complaint, and made complete physical and neurological examinations. The history began with an injury to a finger, treatment by Dr. Dixon, the information that he had high blood pressure, his retirement for that reason in 1949, and the details of the sudden onset of involuntary motions of both hands and difficulty in walking on December 1, 1952. His general physical examination revealed no significant findings except that the blood pressure was 160 over 92. The neurological examination disclosed athetoid, or involuntary movements of the right hand, which McLemore could not adequately control. There were no significant tremors. The only abnormal reflexes were on the left side. There was a slight rigidity about the upper right extremity. His gait in walking was somewhat hesitant, with a tendency to drag the right leg. His diagnosis: McLemore's past history showed hypertension; he had hypertension at the time of this examination; and he suffered a stroke on December 1, 1952, with involvement of the basal ganglia of the brain on the left side, in which area an injury, hemorrhage or clot may result in atheosis. In his opinion, the sudden onset indicated a stroke, and no other diagnosis could be considered. Nothing in the history or neurological findings was compatible with Parkinson's disease. The doctor described as characteristic symptoms and signs of Par-

kinson's disease the following: It develops slowly and not on sudden onset. The patient may be completely unaware until it is pointed out by relatives or friends. The muscular spasm affects predominantly the face and upper and lower extremities. The tremor is such as is sometimes seen in an old man standing on a street corner. There is a spasticity in the lower extremity, and the gait is not hesitant, but propulsive, and he walks by leaning forward and may actually run into a wall or someone. The face assumes a mask like expression, and when the patient smiles at all, the expression is wax like. The poor control of the facial muscles results in saliva drooling at the corner of the mouth. The face and extremities may develop increasing tremor. Speech and swallowing may be seriously affected. In the doctor's opinion McLemore had no symptoms whatever of Parkinson's disease.

Dr. Thomas H. Gandy testified that he made an examination of the plaintiff on January 27, 1955. He took a complete history and made complete physical and neurological examinations. The history represented that McLemore, upon awakening December 1, 1952, noticed both of his hands shaking, but otherwise he felt all right; and later that day drove by auto to Fayette, Mississippi. The next day his wife drove him to the office of Dr. Dixon in Natchez, who promptly sent him to the Illinois Central Hospital in New Orleans, where a consultant was called in for the examination. The hospital authorities wrote Dr. Dixon and he later told McLemore that he had suffered a stroke. It was not until he was leaving the hospital on December 19, 1952, that he noticed difficulty in walking. His hands improved while in the hospital, and later his left hand became free of involvement and his right hand was improved. On the date of this examination, he said that he was able to write to some extent with his right hand. He had been treated by chiropractors and had been in a chiropratic hospital for several weeks, and they had advised him that he had several con-

ditions, including paralysis agitans. On this examination there was no numbness in his right forearm and he had no double vision. There was an intermittent atheoid movement, aggravated by purposeful activity, in employing the right hand. In Parkinson's disease, there is improvement by effort. There was little rigidity of the extremities, and the facial expression was not limited or delayed. His facial reflexes and eyes were normal, except for evidence of high blood pressure in the back of his eyes, where there was a knicking of the veins and several small scars—characteristics of high blood pressure. The blood pressure in the right arm was 168 over 112 and in the left, 160 over 114, which he denominated as high. Reflexes of his right arm were more active than of the left, while the opposite condition existed in the legs as far as the knee reflex was concerned. Abdominal reflex was absent on the right side and normal on the left. Hand strength was diminished on both sides. The circumference of the mid section of the left arm was one-half centimeter greater than the right. His diagnosis was that McLemore's condition was due to hypertension; and the episode of December 1, 1952, was a cerebral vascular accident, with residual effects from that episode. The condition at the time of the examination was consistent with his having the stroke. He did not find any symptoms of Parkinson's disease, and in his opinion, McLemore did not then have, nor had he ever had Parkinson's disease.

For the purpose of considering whether the defendant's requested peremptory instruction should have been given, of course it was necessary that the evidence for the plaintiff, together with all of the logical inferences therefrom, should be taken as true. Under that rule, the peremptory was properly refused.

The given instructions both for the plaintiff and the defendant were proper, and there was no error in refusing the defendant's requested instruction No. 2.

██ The appellee moved to exclude that part of appellant's brief which asked the court to consider a certain textbook on Medicine. The book is on a purely scientific subject and is not a part of the record. Consequently this Court, in conformity to its long-standing rule, has given no consideration whatever to it.

██ The superficial examination by Dr. Costly did constitute, of course, some evidence. This, combined with the plaintiff's testimony, required the submission of the cause to the jury. However, the examinations by the doctors, who testified for the defendant were complete and extensive, and were of such great evidentiary value as to require the trial court to order a new trial because the verdict was against the great weight of the evidence. For the error of the court in overruling the motion for a new trial, the cause must be reversed and remanded.

Reversed and remanded.

*Roberds, P. J.*, and *Hall, Kyle,* and *Holmes, JJ.,* concur.