BROTHERHOOD OF RAILROAD TRAINMEN INSURANCE
DEPARTMENT *v.* McLEMORE.

No. 41223          November 16, 1959          115 So. 2d 352

*Brandon, Brandon, Hornsby & Handy,* Natchez, for appellant.

*C. F. Cowart, McGehee & McGehee,* Meadville, for appellee.

ROBERDS, P. J.

For many years James T. McLemore was employed by the Illinois Central Railroad Company as a brakeman. On September 1, 1939, he took out with the Brotherhood of Railroad Trainmen Insurance Department, Inc., a sick benefit insurance policy. This policy obligated the insurer to "pay the member, beginning with the eighth day of such disability, at the rate of monthly benefits herein specified for the period of such necessary and total disability, not exceeding twenty four months, in the aggregate *for any one type of sickness.*" The amount was payable $100 per month. On December 22, 1948, McLemore developed a case of hypertension and was absent from work until April 12, 1949. On that day he returned to his duties and worked until June, 1949, at which time he became totally disabled to perform his duties on the railroad due to hypertension and he was retired by the railroad. He drew benefit under his insurance policy of $100 a month for disability caused by hypertension from June, 1949 to June, 1951. On or about December 1, 1952, he filed a claim for disability benefits for a period from December 1, 1952 through December 1, 1954. The insurer had declined his demand for such payment and McLemore brought suit to collect said sum. He averred in his declaration that he was suffering from paralysis agitanis or Parkinson's disease.

The insurer, as a defense, contended that McLemore, if ill at all, was suffering from hypertension, for which the company had already paid him, and therefore no liability existed against the insurer. The nature of the disease was the question for determination on the second trial.

The jury returned a verdict for McLemore in the full sum of his demand. The insurer appealed to this Court. The insurer contended in this Court that it was entitled to a peremptory instruction, or, if not, that the verdict was against the great preponderance of the testimony, and for that reason the case should be reversed and remanded for another trial.

In a clear and concise opinion this Court overruled the first but sustained the second contention. Brotherhood of Railroad Trainmen Insurance Department, Inc., v. McLemore, 228 Miss. 579, 89 So. 2d 629 (September 24, 1956).

On a retrial the jury found for McLemore in the full amount of his demand. From that verdict and judgment pursuant thereto the insurer again appeals to this Court. On this appeal the insurer makes the same contentions as were made on the first appeal.

The main contention is that the verdict on the second trial was against the great weight of the testimony as was the case on the first trial. We are of the opinion that the case made by McLemore on the second trial, the record which we are now considering, was a much stronger case than that developed at the first trial.

In the first place we note that on the first trial Dr. Will T. Harper was placed upon the stand by the insurer and gave his testimony in this case. The insurer evidently thought that Dr. Harper's testimony in the first trial was favorable to it. It did not place Dr. Harper upon the stand at the second trial. His testimony against McLemore was not before the jury on the second trial.

In the second place it is noted that the first trial took place September, 1955 and the second trial took place September, 1958. Three years elapsed between the two trials and naturally McLemore's symptoms had changed within that period of time. He testified at both trials. On the second trial he explained that his condition had depreciated in the meantime and that his symptoms had become much worse. On the second trial he exhibited himself to the jury. They observed his hands, legs and manner of walking. The symptoms had not only grown worse but they pointed more specifically to Parkinson's disease as distinguished from hypertension.

In the third place Dr. Charles F. Dorsey testified on the second trial but did not testify at the first trial. He was placed upon the stand by McLemore. Dr. Dorsey was a licensed, practicing physician at Brookhaven, Mississippi. He had been practicing since 1939. He spent a number of years in hospitals, including three years in the army hospitals. He had had large experience and at the time he testified he was connected with the Kings Daughters Hospital at Brookhaven. He examined McLemore in December, 1957 at the request of the Veterans' Administration of Jackson, Mississippi, the occasion being the application by McLemore for a pension for service in the First World War. From that examination he concluded McLemore was suffering from paralysis agitans or Parkinson's disease and he made a certificate to that effect to the Veterans' Administration. At that time, McLemore was "entirely disabled." He described Parkinson's disease in these words: "Mentally, there are no mental symptoms. The mentality is clear. Physically, you have a staggering gait, unable to walk straight, upright, as an ordinary person, stands more forward and sometimes to the side, staggering gait, unable to control the hand movements, unable to hold objects, writing usually becomes smaller. In general you have some wasting away, the appetite becomes worse,

don't feel as good. Sometimes they notice it all of a sudden. It is a gradual thing, but they can notice the symptoms all of a sudden.'' He testified that at the time of this examination of McLemore he did not know that McLemore had filed any suit to collect disability, nor did he know that McLemore was claiming any disability.

Dr. Dorsey also examined McLemore the ''week before he testified.'' He said: ''I found him suffering from the same thing, paralysis agitans or Parkinson's disease.'' He found no sign whatever of cerebral vascular stroke, it being one of the contentions of the insurer that McLemore was suffering from such a stroke. Dr. Dorsey said that had McLemore suffered a cerebral stroke he could have completely recovered from it at the time of his examination. He also testified that the Parkinson's disease had progressed from the time of his first to his second examination of McLemore. He was asked this question: ''Doctor, then in your opinion Mr. McLemore was afflicted on the date of your first and second examination with what disease? A. Paralysis agitans or Parkinson's disease.'' He was asked this question: ''In your opinion a person so afflicted could not perform any work for hire or be gainfully employed? A. Not any work that entailed any physical work at all.''

The jury at the second trial had the benefit of this testimony. The first jury did not have this testimony before it.

We cannot say that the weight of the testimony at the second trial was more favorable to the insurer than to McLemore. We are of the opinion that the contention in this regard is not well taken.

It is contended that the trial court erred in granting to McLemore instruction No. 1 and refusing to grant to the insurer instruction No. 2. These two instructions were granted and refused at the first trial. Complaint as to this action was made on the first appeal. This Court, dealing with the instructions, used this language:

"The given instructions both for the plaintiff and defendant were proper, there was no error in refusing defendant's requested instruction No. 2." Therefore the contention of the insurer as to these two instructions is not well taken.

Affirmed.

*Lee, Kyle, Holmes,* and *Arrington, JJ.,* concur.